**SEABOARD AIR LINE RAILROAD COMPANY, Appellant,**

v.

**GEORGE F. McCOURT TRUCKING, INC., Appellee.**

**No. 17783.**

United States Court of Appeals
Fifth Circuit.
April 20, 1960.

594

Earl D. Waldin, Jr., Smathers, Thompson & Dyer, Miami, Fla., for appellant.

Robert F. Underwood, Knight, Smith, Underwood & Peters, Miami, Fla., for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

■ The question here is whether, by res judicata or estoppel by judgment, a consent judgment against a railroad in a prior action by survivors of a truck driver operates as a bar in favor of the driver's employer, the truck company, when it is sued for damage to railroad property. The District Court held that it was a bar. We disagree and reverse.

■ The judgment appealed from recites that it was on the pleadings. But in actuality the judgment roll in the prior suit was fully authenticated and by stipulation and consent the District Court considered the matter on the pleadings amplified by these uncontradicted facts. It was, therefore, a suitable case for summary judgment under F.R.Civ.P. 12(c), 28 U.S.C.A. The argument before us developed that these papers, as thus authenticated and stipulated, did not reflect the acknowledged fact that the prior suit was actually a compromise settlement under the traditional practice followed in Florida where minors are involved. Under this procedure, after complaint and answer, a jury is impaneled and returns a verdict for the agreed amount upon which judgment is then entered, the judgment paid, and marked satisfied. When this came to light and it appeared likely that the cause might have to be reversed and remanded to permit formal proof of this really uncontroverted fact only to have the case return here again to test the basic question before us, counsel were quick to agree in open court that we should consider the record suitably corrected. In this way we know both what was in fact the fact and this is what the District Judge knew and had before him when he ruled.

For the legal question we have, the cause may be summarized in a capsule. It begins at a railroad crossing where train and truck collide doing damage to both and killing the truck driver. But reversing the usual nature of things, it was the Railroad that sued the Truck Company for damage to the train. Asserted negligence of the Truck Company was the manner in which the truck was operated by the Truck Company's employee, the Driver. The Truck Company answered, denied negligence of the Driver, alleged negligence of the Railroad, and then filed a counterclaim for damages to the truck. The Railroad in answer to the counterclaim repeated its charge of negligence of the Truck Company through the Driver. All of this was taking place in the federal court.

In the meantime, in a Florida state court, the minor children of the Driver sued the Railroad under the Florida Death Statute, F.S.A. §§ 768.01, 768.02, which carried with it the substantial advantage of the statutory presumption against railroads. F.S.A. § 768.05. By what appears to have been unfortunate timing, but as to which the Railroad may well have had little control, this state court case was settled for $12,000 just a few weeks before the trial date of the federal court suit between Railroad and Truck Company. As stated, the state court suit gave the appearance of being a full-blown adversary proceeding with charge and countercharge, jury submis-

sion, verdict and judgment. The fact, now stipulated, was that this was a compromise settlement taking this form to give protection to the Railroad in view of the status of these minor plaintiffs.

In advancing this state court judgment casting the Railroad for $12,000 damages as a plea in bar against the Railroad in the federal court suit, the Truck Company had this theory. First, it recognized, of course, that under the comparative negligence statute applicable to claims *against* a railroad,[1] the minor plaintiffs conceivably could recover even though their father, the truck Driver, was guilty of some negligence. Consequently, it did not, and could not, urge this state court judgment as a bar that the truck Driver was *not guilty of some* negligence. Despite this, so it contended, neither under F.S.A. §§ 768.06, 768.05, nor the provisions of the Florida Death Statute, F.S.A. §§ 768.01, 768.02, could the minor children recover from the Railroad unless the Railroad was guilty of *some* negligence. Consequently, the judgment against the Railroad awarding $12,000 damage was a formal determination that the Railroad had been guilty of *some* negligence. In translating that state court judgment to the federal court suit, this implied finding was then urged as decisive. This was so because in a suit by a railroad company for its own damages, *any* negligence proximately causing the damage would be contributory negligence which constitutes a complete bar. In other words, as a defendant for damage done to others, a railroad is faced with comparative fault, see note 1, but as a plaintiff suing for its own damage, it bears the full rigor of the common law rule of contributory negligence and loses as a matter of law if it were guilty of any negligence.

Of course, since the Truck Company was not itself a party to the state court judgment or proceedings, this theory was bottomed on the frequently applied rule relating to derivative liability.[2] In brief,

1. "768.06 Comparative negligence
    "No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant."

2. The briefs point us to these text statements.
    "If a defendant's responsibility is necessarily dependent upon the culpability of another, who was the immediate actor, and who, in an action against him by the same plaintiff for the same act, and has been adjudged not culpable, the defendant may have the benefit of that judgment as an estoppel. This is so even though a judgment holding the other person culpable would not be conclusive as to the defendant. The unilateral character of the estoppel of an adjudication in such cases is justified by the injustice which would result in allowing a recovery against a defendant for conduct of another, when that other has been exonerated in a direct action. A similar rule has been applied where the alleged

wrongdoer was not the defendant but was the plaintiff in the earlier action, and the judgment determined an issue in his favor, which is controlling in the second action against the person alleged to be derivatively responsible." 30A Am.Jur., Judgments, § 425, pp. 478–479.

    "Also, as a general rule, a judgment in an action against the employee which exonerates the employee from personal liability for an act which he committed while acting for his employer, and establishes that the act was not wrongful or that it was excusable, is necessarily a like determination in favor of the employer, and is conclusive in a subsequent action against the employer based upon the same injury. This is in accord with the general principle that a judgment in favor of either principal or agent in an action brought by a third party, rendered upon a ground equally applicable to both, should be accepted as conclusive against a subsequent right of action against the other." 35 Am.Jur., Master and Servant, § 534, p. 963.

    In addition to this, the Truck Company emphasizes the following cases: Bigelow v. Old Dominion Copper Mining & Smelting Co., 1912, 225 U.S. 111, 32 S.Ct. 641, 642, 56 L.Ed. 1009; Giles v. Smith, 1949, 80 Ga.App. 540, 56 S.E.2d 860, 862; Mooney v. Central Motor Lines, Inc.,

the thesis was that since, between Railroad and the truck Driver (or persons standing in his shoes), the Railroad was held at fault, the Railroad was not free to relitigate that same issue when the Truck Company's liability depended on the negligence or non-negligence of that same Driver.

The parties have been preoccupied with the engaging problems of privity, the nature of this state court action by the minor children, not the Driver's estate, as one being, or not being, derivative of the truck Driver, as well as complications flowing from the conflicts in the simultaneous application of comparative or contributory negligence concepts. We escape these intriguing questions for we think a fundamental factor keeps this state court judgment from being a bar by estoppel.

■ If the prior judgment is conclusive of this action, it must be estoppel by judgment since the suits are based on different causes of action. But for estoppel by judgment to foreclose relitigation of *issues* in a subsequent suit, it is essential that the *issue* sought to be foreclosed was actually litigated and determined in the initial action. In the context of the effect of prior adjudications in derivative liability cases, this is emphasized in Mooney v. Central Motor Lines, Inc., 6 Cir., 1955, 222 F.2d 572, 573. That court points out that "the doctrine of estoppel by judgment * * * proceeds upon the principle that one person shall not a second time litigate, with the same person or with another so identified in interest with such person that he represents the same legal right, precisely the same question, particular controversy, or issue, which has been necessarily tried and finally determined upon its merits * * *."

This Court has emphasized the same thing. In the scholarly opinion by Judge Sibley, the Court in Kelliher v. Stone & Webster, 5 Cir., 1935, 75 F.2d 331, discusses the basic distinction between res judicata, on the one hand, and estoppel by judgment, sometimes called collateral estoppel, on the other. As to estoppel by judgment, the Court said "the res which may be judicata is the particular issue or fact common to both suits * * *." 75 F.2d 331, at page 333. " * * * To conclude that particular issue or fact it is necessary that the record of the former suit by itself or as aided by extrinsic evidence of what occurred at the trial should show with certainty that that fact or issue was indeed litigated and decided on its merits * * *." 75 F.2d 331, at page 333. This same idea finds frequent expression. A "judgment operates as an estoppel only as to matters in issue * * * and actually determined in the original suit." Troxell v. Delaware, Lackawanna & Western R. R. Co., 1931, 227 U.S. 434, 440, 33 S.Ct. 274, 276, 57 L.Ed. 586, 590. In an estoppel situation, "the inquiry is whether the point or question to be determined in the later action is the same as that litigated and determined in the original action." Tait v. Western Maryland Ry. Co., 1933, 289 U.S. 620, 623, 53 S.Ct. 706, 707, 77 L.Ed. 1405, 1408. And in United States v. International Bldg. Co., 1952, 345 U.S. 502, 73 S.Ct. 807, 809, 97 L.Ed. 1182, the Court, in holding that a prior consent judgment did not operate as estoppel by judgment emphasized the following declaration from an earlier and significant case. "In all cases * * * where it is sought to apply the estoppel of a judgment * * * the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action." Cromwell v. County of Sac, 1877, 94 U.S. 351, 353, 24 L.Ed. 195, 197, 198. The comments then made by the Court concerning the stipulated consent judgment in

6 Cir., 1955, 222 F.2d 572, 573; Leary v. Virginia-Carolina Joint Stock Land Bank, 1939, 215 N.C. 501, 2 S.E.2d 570; Blue Valley Creamery Co. v. Cronimus, 1937,

270 Ky. 496, 110 S.W.2d 286; Stone v. Carolina Coach Co., 1953, 238 N.C. 662, 78 S.E.2d 605; 112 A.L.R. 404; 133 A.L.R. 196.

the Tax Court in the earlier years has a striking parallel application to our situation. "There is no showing either in the record or by extrinsic evidence \* \* \* that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. \* \* \* Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration. \* \* \* But unless we can say that they were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits \* \* \*." United States v. International Bldg. Co., supra, 345 U.S. 502, 505–506, 73 S.Ct. 807, 809, 97 L.Ed. 1182, 1188.

It is now admitted that the Railroad never actually litigated either the issue of its own actions or the conduct of the truck Driver. For reasons satisfactory to it, all of these were washed out by the refuge which a fixed compromise settlement afforded. Of course, this consent judgment as between the parties to it and their successors in privity was as binding and valid as one resulting from an adversary contest. But as a non-litigated, court-approved compromise effectuated to avoid the risk of litigation, it does not operate as an estoppel by judgment in a subsequent suit not between the same parties or those in privi-

ty with them. This is so even though such persons might have been considered to be bound as parties or privies through concepts of derivative liability had such judgment been entered after litigation and a judicial determination concerning the operative effect of facts either proved or stipulated.[3]

As it is the essence of estoppel by judgment that the same issue was necessarily litigated and judicially determined in the prior suit, Kelliher v. Stone & Webster, supra, so that extrinsic evidence is frequently needed to prove it, see Russell v. Place, 1877, 94 U.S. 606, 608, 24 L.Ed. 214, 215, there may be instances in which a "judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court." United States v. International Bldg. Co., supra, 345 U.S. 502, at page 506, 73 S.Ct. 807, at page 809, 97 L.Ed. 1182, at page 1188. But here the now admitted extrinsic facts establish without contradiction that the state court judgment was merely the means by which to give finality to a compromise settlement to avoid the risk to either party of a judicial ascertainment of any or all of the issues inherent in that cause.[4] On the uncontradicted facts, nothing was adjudicated, nothing was determined.[5] That being so, this consent "judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties." United States v. International Bldg. Co., supra, 345 U.S. 502, at page 506, 73 S.Ct. 807, at page 809, 97 L.Ed. 1182, at page 1188.

■ The Court erred, therefore, in granting the summary judgment in fa-

---

3. See Annotations, 97 L.Ed. 1188, especially § 6 at 1195, 2 A.L.R.2d § 7 at page 535.

4. This whole subject is treated at length in the Annotation, Res Judicata as Affected by Fact that Former Judgment was Entered by Agreement or Consent-Federal Cases, 97 L.Ed. 1188 (1953). See especially §§ 3, 5, 6, 9, 11. Cf. Annotation 2 A.L.R.2d 514–576, especially §§ 6, 7, 9, 11–13.

5. See Roseman v. Roseman, 1945, 155 Fla. 750, 21 So.2d 215, 216:
"\* \* \* [T]he New Jersey decree was entered by consent of the parties \* \* \*. The New Jersey adjudication was predicated on the agreement for support and maintenance rather than on the merits of the charge of desertion.
"Under such a state of facts, we do not think the New Jersey decree could be said to be res adjudicata as to the suit for divorce on the grounds of desertion."

vor of the Truck Company thereby dismissing with prejudice the Railroad's suit against the Truck Company. To this extent the Railroad has at least had its way. It started the suit and now all that is left is its own claim. Consistent with what we have said, the Railroad's action against the Truck Company is remanded for appropriate proceedings and trial.[6]

Reversed and remanded.

6. Subsequent to the summary judgment dismissing the Railroad's suit against the Truck Company, the Truck Company's counterclaim against the Railroad was tried. The jury returned a verdict for the Railroad on which a judgment in favor of the Railroad was entered. That judgment is not before us for review. The existence of it does not, as contended by the Railroad, compel a judgment establishing liability in favor of the Railroad thus leaving only a question of damages.